**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT A. KASIRER, JEROLD V. GOLDSTEIN, JOEL T. BOEHM, JAMES E. IVERSON, and VICTOR P. DHOOGE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )  Case No. 04 C 4340 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Securities and Exchange Commission has sued Robert Kasirer, Jerold Goldstein, Joel

Boehm, James Iverson, and Victor Dhooge, as well as several "relief defendants" associated with

Kasirer, for violation of the securities laws. The SEC alleges that the five named defendants

committed fraud in connection with twelve public offerings of municipal revenue bonds which

raised $144 million from over 1800 investors. The stated purpose of the offerings was to finance

the acquisition, renovation, and operation of ten healthcare facilities located in Texas, Florida,

and California, as well as one in Chicago. The facilities were to be owned and operated by

Heritage Housing Development, Inc., a California concern.

According to the SEC, the defendants claimed in the offering documents that the

proceeds from the sale of the bonds would be used to finance specific facilities. In fact, the SEC

alleges, the costs of developing the facilities far exceeded the proceeds of the respective

offerings, and the defendants covered the shortfalls by diverting proceeds from the later offerings to pay for the earlier projects. All ten facilities eventually failed. The SEC alleges that Kasirer and Goldstein controlled Heritage and were the main architects of the scheme; Kasirer and Goldstein directed the misapplication of the bond proceeds; and Iverson and Dhooge, representative of an underwriting firm called Miller & Schroeder, managed the underwriting of the offerings despite their knowledge of the misapplication. Boehm was an attorney for Miller & Schroder and is claimed to have issued favorable legal opinions despite knowing of the misapplication.

Each of the individual defendants lives and works in California, and that was where they were located when they engaged in the conduct that the SEC alleges constituted securities fraud. Heritage, too, was located in California and conducted its business from that state. The projects that the bonds were issued to finance were located in a number of states, including California, Texas (six of the ten facilities), and Florida, as well as one project in the Chicago area. The underwriting firm, Miller & Schroeder, which is now defunct, had its principal office in Minnesota, but also had an office in California, and the principal personnel with the firm that participated in the underwriting, defendant Iverson and Bruce Talley, worked in the firm's office in southern California. Miller & Schroeder's records are in the custody of a bankruptcy trustee in Minnesota.

Several federal civil cases involving the issuance of the Heritage bonds (including one filed in Illinois and one filed in Texas) were transferred to the Central District of California by the Judicial Panel on Multidistrict Litigation because that district was the center of gravity for the related actions. *See In re Heritage Bond Litigation,* 217 F. Supp. 2d 1369 (J.P.M.L. 2002). The

2

vast majority of the depositions taken in that case have been taken in southern California because that is where the witnesses were located.

The Court has approved consent decrees that dispose of the claims against Boehm, Iverson, and Dhooge. Goldstein has moved to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a). The SEC opposes transfer. Kasirer has chosen to take no position on Goldstein's motion.

### Discussion

Under § 1404(a), a court may transfer an action to any other district where it might have been brought, for the convenience of parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a). The party seeking transfer must show that the proposed transferee district is "clearly more convenient" than the one the plaintiff chose. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986). Conversely, transfer is inappropriate if all it would do is shift the burden of inconvenience from one side of the case to the other. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989).

In evaluating the convenience of the parties and witnesses, the court considers the plaintiff's choice of forum, the relative ease of access to evidence in the competing forums, the convenience of witnesses, and the convenience of the parties in litigating in the respective forums. *See, e.g., Millennium Products, Inc. v. Gravity Boarding Co.,* 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000).

The plaintiff's choice of a forum is ordinarily entitled to significant weight, *see Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir. 1982), and perhaps even greater weight when the plaintiff is the SEC. *See, e.g., SEC v. Electronics Warehouse, Inc.,* 689 F. Supp. 53, 74 (D.

3

Conn. 1988). But § 1404(a) does not contain an exemption for SEC actions, and in any event, the weight to be accorded the plaintiff's choice is diminished when, as in this case, the action has no significant connection with the forum the plaintiff chose. *See, e.g., Federated Department Stores, Inc. v. U.S. Bank National Association*, No. 00 C 6169, 2001 WL 503039, *2 (N.D. Ill. May 11, 2001); *Houck v. Trans World Airlines, Inc.*, 947 F. Supp. 373, 375-76 (N.D. Ill.1996).

The SEC has identified only two points of contact between this case and Illinois. First, one of the ten projects that the bonds were supposed to fund is located here. Second, the SEC, for reasons it has not identified, chose to investigate the case out of its Chicago office. The location of counsel, however, is not a relevant factor under § 1404(a), *see, e.g., In re Horseshoe Entertainment,* 337 F.3d 429, 434 (5th Cir. 2003); *Lindley v. Caterpillar, Inc.,* 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000); otherwise, a plaintiff could manipulate the selection of a forum by its choice of an attorney. The fact that one of the projects was located here likewise is not a connection of significance. As described by the SEC, the fraud involved the issuers and underwriters of the bonds, not the persons who were going to be involved in the renovation of the facilities or the representatives of the municipalities involved in the issuance of the bonds. Under the circumstances, though the SEC's selection of this District may be entitled to some weight, that factor does not weigh heavily against transfer.

The SEC notes that the witnesses, events, and documents are scattered through various states, including mainly California, Minnesota, and Texas, and based on this it argues that it would not help to transfer the case to California. The SEC appears to acknowledge, however, that most of the witnesses are in states other than Illinois. And as noted earlier, Goldstein has made a substantial showing that California is the predominant location of key witnesses. It is

4

certainly true, as the SEC argues, that the witnesses' testimony can be presented at trial by way of deposition. Our system of justice, however, prefers trials that involve live testimony. One of the aims of § 1404(a) is to "minimize the risk of 'trial by deposition.'" *Worldwide Financial LLP v. Kopko,* No. 1:03-CV-0428-DFH, 2004 WL 771219 (S.D. Ind. Mar. 18, 2004) (citing cases).

The simple fact is that the SEC has not identified a single *material* witness who is within this Court's subpoena power. Moreover, there is no indication that any significant documentary evidence is located in this District, aside from photocopies of documents that the SEC obtained in its investigation. To authenticate and explain those documents, discovery in the districts from which they were produced likely will be required. In sum, consideration of the convenience of witnesses and the ease of access to sources of proof tilts the balance significantly in favor of transfer.

The factor of convenience of the parties likewise weighs in favor of transfer. Each of the defendants lives and works in California. As noted earlier, the SEC's attorneys are located in this District, but unlike the location of the defendants, that was a matter of litigation-related choice that the SEC has not attempted to justify. The SEC has an office in the Central District of California, and even though it transferring the case to that office (if that is what the SEC elects to do) will involve some burden, it is far less than the burden imposed on in the individual defendants in litigating nearly two thousand miles from their home district.

In assessing the interests of justice, the court considers such concerns as "ensuring speedy trials, trying related litigation together and having a judge familiar with the applicable law try the case." *Heller,* 883 F.2d at 1293. These factors tilt in favor of transfer, albeit only slightly. It is true that the previously referenced MDL proceedings are pending in the Central District

5

California, but there is no guarantee that this case would be assigned to the same judge as that one following transfer. The applicable law in this case is federal securities law, and thus a judge in a particular district has no inherent advantage over judge in other districts. The speedy trial factor, however, somewhat favors transfer. According to statistics published by the Administrative Office of the United States Courts, the median time to trial for a civil case in the Central District of California in 2004 was 17.8 months, as compared with 28.4 months in this District. The median time to trial for cases on my own docket is significantly lower than the median in this District as a whole, but not as low as the median in the Central District of California.

In sum, Goldstein has made a "clear-cut showing" that the factors of convenience and the interests of justice favor transfer to the Central District of California. *SEC v. Electronics Warehouse,* 689 F. Supp. at 75. For these reasons, the Court grants his motion to transfer venue.

### Conclusion

For the reasons stated above, the Court grants defendant's motion to transfer venue [docket # 22-1]. The Clerk is directed to transfer the records and files of this case to the Central District of California, Western Division.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 21, 2005

6